NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE ESTATE OF PAUL PROSKE, : | |
| Plaintiff, : | **Hon. Dennis M. Cavanaugh** |
| v. : | **OPINION** |
| UNITED STATES OF AMERICA, : | Civil Action No. 09-CV-670 (DMC) |
| Defendant. : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon cross-motions for summary judgment by The Estate of Paul E. Proske, Laura O Hara, Executrix ("Plaintiff" or "the Estate") and Defendant United States of America ("United States"). On March 30, 2010, Plaintiff moved for summary judgment on Count I of its Complaint, seeking a refund of a $305,000 penalty and interest imposed by the Internal Revenue Service (the "Service") resulting from Plaintiff s purportedly late filing of its estate tax return. On April 1, 2010, the United States moved for summary judgment, seeking dismissal of Plaintiff's Complaint in its entirety. This Court has jurisdiction pursuant to 28 U.S.C. §1346(a)(1) (granting district courts jurisdiction over "[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected").

No oral argument was heard pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion for summary judgment is **granted**, and the summary judgment motion of the United States is **denied**.

## I. BACKGROUND[1]

Paul Proske married Donna Weller ("Ms. Weller") in 2005 and entered into a prenuptial agreement, which contained provisions to determine Ms. Weller's bequest amount with respect to Proske's estate. See Plaintiff's Brief in Support of its Motion for Summary Judgment on Count I ("Pl. Br. 17-1"), at 4. Proske died on June 16, 2005, and Laura O'Hara, the decedent's daughter, was appointed as Executrix of the Estate. Id. The decedent's Last Will and Testament left four beneficiaries in total: his wife, Ms. Weller, and three adult daughters, including the executrix. Id.

The Estate identified a range for Weller's likely bequest amount within two or three months of the decedent's death. Id. Based on that range of the bequest amount, the marital deduction for the Estate's tax return was to be between $175,000 and $663,000. Id. Approximately 74% of the Estate's assets were illiquid assets, consisting of real property and annuities. Id. A life insurance policy represented over 60% of the Estate's potential liquid assets. Id. The Estate received insurance policy proceeds to pay the estate tax in March 2006. Id.

The tax return for the Estate (Form 706) was due March 16, 2006, nine months after the decedent's death. No return or automatic extension request was filed prior to March 16, 2006, but on April 25, 2006, Plaintiff submitted Form 4768, Application for Extension of Time to File a Return and/or Pay U.S. Estate Taxes ("the extension request"). With the extension request, Plaintiff provided a payment of $1.8 million in estimated taxes. Id. This amount represented Plaintiff's full estimated tax liability. Id. at 5. (As discussed below, the applicable regulation explicitly permits retroactive extension requests.) The explanation attached to the extension request in the Proske

---

[1] The Facts in the Background section have been taken from the parties' submissions to the Court.

matter stated:

### Attachment to Form 4768, Part II

Decedent, Paul Proske, died on June 16, 2005. . . . The calculation of the amount due to the surviving spouse has been very difficult to determine accurately and has created significant delays in assessing the overall taxable estate.

In addition, we did not receive all of the appraisals necessary to value the other estate assets and liabilities, prior to March 16, 2006, and were therefore unable to file a timely application for an automatic extension.

### Attachment to Form 4768, Part III

The estate is also quite illiquid, as it is comprised primarily of real estate and retirement plan assets. The primary source of funds to pay the estate tax is an insurance policy payable to the estate. The proceeds from this policy were only recently received. The balance of the funds was contributed by the beneficiaries of the estate, who were required to liquidate personal assets to make up the shortfall. Prior to this time, payment of the estate tax liability would have been impracticable.

Id.

These reasons were further explained in Plaintiff s answers to Defendant's June 29, 2009, questions, as follows:

1(a). Pursuant to Treas. Reg. §20.6081-1(a), a request for an extension of time to file a return must be made by filing Form 4768. Parts III and IV of Form 4768 mandate, under penalty of perjury, that when filing the Form the taxpayer pay the estimated amount of estate and GST taxes to be due. The Form requires the taxpayer to certify, under penalty of perjury, that the information provided in the Form is true and correct to the best of the taxpayer s knowledge and belief. A taxpayer is entitled to an automatic six month extension of time beyond the due date for the filing of the return on the condition that the taxpayer strictly follow the requirements of Form 4768. The Form does not contain a provision for the relaxation of the Form's requirements. Here, the taxpayer did not seek the automatic six month extension. As set forth in the Complaint and Answers to Interrogatories, the reasons as to why the taxpayer did not seek an automatic extension prior to the original filing date include (i) the complexity of the Estate; (ii) the impracticality of paying and inability to pay, under penalty of perjury, an estimate of estate taxes to be due, the amount of which could not be ascertained until after the original filing date had passed; (iii) missing material documents; and (iv) tensions among the beneficiaries.

Pursuant to §20.6081-1 (c), the Internal Revenue Service has the discretion to

>grant an extension of time to file a return where a taxpayer did not seek an automatic extension if, inter alia, it was either impossible or impractical to file a reasonably complete return by the due date. Here, prior to the original filing date, no true and correct estimate of estate taxes, based on taxpayer's knowledge and belief, could be certified to, under penalty of perjury, as required by Form 4768. Further, prior to the original filing date, the Estate was not only essentially illiquid but the Estate could not make an estimate of the amount of tax to be due. Where, as here, Form 4768 cannot be certified, under penalty of perjury, prior to the original filing date, then §20.6081-1(c) allows the Internal Revenue Service, in its discretion, to permit an extension for good cause shown. Good cause includes either the inability or impracticality of filing a reasonably complete return by the due date. Treas. Reg. § 20.6081-1(c).
>
>Plaintiff alleges there was more than good cause for the Service to exercise its discretion to allow the taxpayer to obtain an extension by filing Form 4768 after the original due date. One of the many good cause reasons include the inability to pay an estimated tax, for the reasons previously given, as well as the impracticality of paying an estimated tax where the estimated amount of the tax to be due was not known prior to the original filing date. Plaintiff alleges the Service both failed to exercise (nonfeasance) and abused the discretion (misfeasance) vested in it and as required by §20.6081-1(c).

Id. at 5-6.

Plaintiff's extension request was denied by Thomas Carney, a tax examiner of the Internal Revenue Service in Covington, Kentucky, on June 2, 2006. Id. at 5-6. The "denial notice from the Service stated that 'The application for extension of time to file (Part II or III) is...[n]ot approved because [y]our application was filed after the due date of the return. Due 3-16-06. Please file your return without delay to avoid additional penalties & interest.'" Id. (internal citations omitted). Plaintiff filed its estate tax return on or about June 14, 2006. Id. The Service assessed penalties against Plaintiff for both late filing of the return and late payment of the estate tax. Id.

The assessment of the penalty for late filing of the return was in the amount of $267,189.71, however, with interest, the total penalty paid was $305,130. Id. On or about August 12, 2008, the Estate filed Form 843, Claim for Refund and Request for Abatement, and submitted the full payment of the penalty and accrued interest. Id. at 7. Of importance, is the fact that there is no documentation

as to whether or how the IRS considered the explanation provided by the Estate. Id.[2] The only documentation that exists with respect to the agency's action in this matter is a document indicating that the extension request was denied as late. In the absence of any recorded basis for the denial, it appears that the Service's decision was simply a rubber stamp.

On February 17, 2009, Plaintiff filed this Complaint, alleging that: the [IRS] abused its discretion when it denied the taxpayer's extension request despite the taxpayer's showing of good and sufficient cause for an extension (Count I), and that Section 6651 penalties should not be imposed because the late filing of the estate tax return was due to reasonable cause and not willful neglect (Count II). On May 4, 2009, the Defendant filed its Answer. The parties conducted preliminary discovery in an unsuccessful attempt to settle this matter. On July 16, 2009, the Defendant filed a motion for summary judgment. This Court denied that motion.

On March 30, 2010, Plaintiff moved for summary judgment on Count I of its Complaint. On April 1, 2010, the United States cross-moved for summary judgment, seeking dismissal of Plaintiff's Complaint with prejudice. These motions are the subject of this Opinion.

---

[2] Although there is no documentation detailing the examiner's decision in the Proske matter, the Service urges that:

> the United States can conclude based on the regular business practice of the IRS that the IRS denied the Estate's extension request because the extension request was untimely and because the IRS determined that the Estate's explanation for good cause was insufficient. The Tax Examiners of the IRS Estate and Gift section, including Thomas Carney, are trained to read and consider any attachments to an extension request and explanations provided by a taxpayer when reviewing an extension request, and they do not always document all of the reasons for a denial of a taxpayer's extension request or their responses to any attachments or explanations submitted with the extension request by a taxpayer.

United States' Response in Opposition to Plaintiff's Motion for Summary Judgment on Count I of the Complaint ("Def. Br. 23"), at 4. The Court's determination with respect to how a reviewing court should interpret a tax examiner's exercise of discretion are considered in full below. See Section III.B.1, supra.

## II. STANDARD OF REVIEW

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). The moving party bears the burden of showing either (1) there is no genuine issue of fact and it must prevail as a matter of law; or (2) the non-moving party has not shown facts relating to an essential element of the issue for which he bears the burden. Celotex, 477 U.S. at 331. If either showing is made then the burden shifts to the non-moving party, who must demonstrate facts that support each element for which he or she bears the burden and must establish the existence of genuine issues of material fact. Id. The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, FED. R. CIV. P. 56(e), but must produce sufficient evidence to support a jury verdict in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The Court will consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Penn. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

In opposing a summary judgment motion, conclusory statements and arguments are insufficient to prevent summary judgment. Ridgewood Bd. of Educ. v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999); Sterling Nat'l Mortg. Co. v. Mortgage Corner, 97 F.3d 39, 45 (3d Cir. 1996) (noting that mere speculation about the possibility of the existence of such facts does not raise a triable issue.).

### III. DISCUSSION

Plaintiff moves for summary judgment on Count I of its Complaint, seeking a refund of a $305,000 penalty resulting from Plaintiff's purportedly late filing of its estate tax return. Plaintiff argues that the Service's imposition of the penalty directly results from its abuse of discretion in failing to grant or properly consider Plaintiff's extension request for filing its estate tax return, pursuant to Treasury Regulation § 20.6081-1(c), (6081-1(c)).[3] For the following reasons, the Court agrees with Plaintiff, and will grant its motion for summary judgment.

#### A. APPLICABLE LAW

Section 6651(a) of the Internal Revenue Code mandates the assessment of penalties for failure to file a timely return. A taxpayer, however, may seek an extension of his or her filing deadline pursuant to Treasury Regulation § 20.6081-1. Under § 6081-1(c), an estate taxpayer has the right to file a request for an extension of time, and the regulation explicitly permits an extension request to be filed even if the original filing due date has already passed. Id. The provision states that the "Internal Revenue Service may, upon the showing of good and sufficient cause, grant an extension of time to file the return." Id.

Although the grant or denial of an extension request by the agency is discretionary, the Service's "exercise of discretion to grant or deny an extension is suitable for judicial review." Estate

---

[3] Plaintiff pleads, in the alternative, that there is "reasonable cause" under 6651(a) for its failure to file a timely tax return. For the reasons discussed herein, Plaintiff's motion need not be considered, as the Court finds that Plaintiff is entitled to its sought relief on its First Count. In any case, the Court previously determined in its Opinion of August 13, 2009, that there was a genuine issue of material fact related to Plaintiff's Second Count.

of Gardner v. Commissioner, 82 T.C. 989, 994 (1984) (citing Dunlop v. Bachowski, 421 U.S. 560, 567 (1975)) (finding that the Service's "exercise of discretion to grant or deny an extension is suitable for judicial review."); see also Abbott Labs. v. Gardner, 387 U.S. 136, 140-41 (1967); Eastman Mach. Co., Inc. v. U.S., 841 F.2d 469, 474 (2d Cir.1988); United States v. Winthrop Towers, 628 F.2d 1028, 1032, 1035 (7th Cir. 1980).

### B. ANALYSIS

Plaintiff challenges the Service's denial of its extension request.  If the request had been granted, the Estate's tax return would have been timely filed, as it (along with payment in full of $1.8 million) was submitted well before the extended time period would have expired.

Plaintiff asserts that (1) the Service abused its discretion in denying the extension request, and (2) Plaintiff did in fact have "good and sufficient cause" for an extension.  Accordingly, Plaintiff argues, this Court should find the Service's denial of the extension request void and consider the Estate's tax return timely filed.

1. Abuse of Discretion

The Court must first determine whether the Service abused its discretion under § 6081-1(c) by refusing to grant Plaintiff's extension request.

(a)   *Judicial Review – De Novo Standard*

First, as an initial matter, the Court observes that it may review the decision of the Service to deny the Estate's extension request.  In the most analogous case cited by the parties, Estate of Gardner, 82 T.C. 989, a petitioner filed an extension request 11 days after decedent's return was otherwise due, asking that the due date be extended to September 1, 1980.  Id. at 993.  Had

petitioner's request been granted, the tax return would have been filed within the extended period for filing. Id. The Service, however, denied the extension request. Id. at 991. The Court specifically determined that the Service's discretion was subject to judicial review. Id. at 997. Next, having determined that the Service's denial of an extension request is subject to judicial review, the Court also notes that it must apply a *de novo* standard of review. See id. at 999; R.E. Dietz Corp. v. United States, 939 F.2d 1, 4 (2d Cir. N.Y. 1991).[4]

It is appropriate, then, for district courts to review the Service's denial of the Estate's extension request *de novo*.

      (b)  *The Tax Examiner's Exercise of Discretion in the Proske Matter*

The Court next must determine whether, under the circumstances here, the Service did in fact abuse its discretion.

When the Service receives an extension request pursuant to § 6081-1, it determines whether the party requesting the extension has demonstrated good and sufficient cause. Although the Service has wide latitude in determining whether an extension is appropriate, it must exercise its discretion in a non-arbitrary manner. Here, the evidence of record—in particular the testimony of Joseph Petrone, an IRS estate tax attorney who audited the tax return of the Estate of Paul E. Proske—indicates that the Service failed to do so.[5]

---

[4] The parties appear to agree on the standard of review to be applied by this Court. See Pl. Op. Br. at 9; Def. SJ Br. at 7.

[5] Plaintiff also asserts that Mr. Petrone gave conflicting testimony. First, at his deposition, Mr. Petrone indicated that Mr. Carney (the examiner who handled the Proske Estate's extension request) did not recall why he denied the extension request. See Doc. 17-2, Ex. 1, at 54, 58. In a subsequent certification submitted to the Court, Mr. Petrone asserted that "Carney found no valid basis for granting the extension." See Doc. 19-3. In so doing, he appears to be presuming that in accordance with IRS practice, Mr. Carney would not have denied the request if

The following line of questioning occurred at the 30(b)(6) deposition of Mr. Petrone:

> Q. Is it also true that when examiners like Carney deny requests such as occurred in the Proske matter, that they don't set forth their reasons anywhere?
> A. Well, I think there is some indication that they would say why they're denying.
> Q. Take a look at P-5.
> A. He [Carney] did not in this particular case.
> Q. He did not. So he doesn't remember why he denied it, and we don't know why he denied it?
> A. On a reasonable cause or good and sufficient cause basis, he did not respond. He did respond, though, that it was late, you know, in filing, and this is why it was denied.
> Q. Okay. But other than that we don't know why he denied it.
> A. For this other basis, for the reasonable case issue?
> Q. Right.
> A. No.

Doc. 17-2, Ex. 1, at 55. Subsequently, in confirmation, Mr. Petrone was asked:

> Q. He [i.e., Carney] doesn't remember [why he denied the extension request]?
> A. He doesn't remember the specific, that's correct.
> Q. And when you say he doesn't remember the specific, he doesn't remember what he did in denying the Proske extension. Is that correct or not?
> A. That's correct.

As Mr. Petrone testified, there is no indication in the denial decision as to why the request was not granted. He notes that the request was late, but the mere fact that an extension request is late does not alone justify a summary denial of the request, as the regulation explicitly contemplates post-filing deadline extension requests. See § 6081-1. The Service has failed to locate or produce any

---

there were valid reasons for such an extension—however, simply because IRS regulations provide that an examiner should operate a certain way does not conclusively demonstrate that he or she did so. See Doc. 23-1.

   The Court is mindful of the fact that Mr. Petrone's subsequent certification in support of the Service's summary judgment offers contradictory, or at least different, testimony than his initial deposition testimony. This fact is noted by the Court in declining to accept the Service's after-the-fact reasoning to justify the denial of the Proske extension request through Mr. Petrone's testimony.

record indicating why the extension request was denied.[6] Moreover, neither Petrone nor Mr. Carney are aware of the reasons it was denied. The Court (and apparently the Service) are unaware of the basis for the denial of an extension request.

The Service responds that although there is no documentation as to the specific reason that Mr. Carney rejected Plaintiff's extension request, a justification can be presumed based on agency practice. The Service asserts that the Court can presume that the Examiner denied the request because he found the explanation for good cause to be insufficient; it asserts, that

> [t]he Tax Examiners of the IRS Estate and Gift section, including Thomas Carney, are trained to read and consider any attachments to an extension request and explanations provided by a taxpayer when reviewing an extension request, and they do not always document all of the reasons for a denial of a taxpayer's extension request or their responses to any attachments or explanations submitted with the extension request by a taxpayer.

Petrone Decl. ¶¶ 5,6. The Court recognizes that an Examiner may consider a variety of documents and factors to determine whether to grant or deny an extension. The Court even agrees that it is possible that Mr. Carney did so here. However, if an examiner's reasons for his or her decision to deny an extension request are not documented, there can be no judicial review of the decision to grant or deny a request—especially where, as here, the Examiner has produced no explanation and is unable to recall the basis for his decision. Accordingly, the Service's position that a justification for the denial can simply be presumed cannot be correct: as the case law clearly indicates, an extension denial can in fact be judicially reviewed. If the Court were to adopt the Service's

---

[6] The Court notes that when asked "Would it be fair to say that the decision to deny the extension request in Proske was made exclusively by Carney?" Mr. Petrone responded that "[he] would say yes." Accordingly, any other documentation regarding the request, and the denial thereof, may be irrelevant in this Court's analysis of Mr. Carney's denial of the Proske extension request.

reasoning, the ability of a Court to review a tax examiner's extension denial would be entirely foreclosed so long as the examiner neglected to document/recall the basis for his or her denial. For this reason, the Court must reject the Service's interpretation of a reviewing court's role in reviewing an examiner's extension request.

Having determined that a court may review an examiner's decision to deny an extension request, and that a rationale for such a denial cannot merely be presumed, this Court finds that the Service's decision here must be considered an abuse of discretion. As the Court in Gardner explained, "an initial automatic denial without considering the facts and circumstances . . . would constitute the very essence of arbitrary administrative action and an abuse of the discretion." 82 T.C. at 1000. There has been no explanation for the Service's decision, and even discretionary decisions, if made without a rational explanation, constitute an abuse of discretion. See Wong Wing Hang v. Immigration and Naturalization Serv., 360 F.2d 715, 719 (2d Cir. 1966); Greene v. Commissioner, T.C. Memo. 1997-296 (collecting cases) (noting that the Service commits an abuse of discretion where its decision is arbitrary, capricious, or unreasonable).[7]

The Court finds, based on the undisputed facts here, that the Service abused its discretion. The Service's conclusory statements with respect to the probable basis for the denial of the extension

---

[7] The Service notes that § 20.6081-1(c) states that "[f]ailure to file Form 4768 [the extension request] before that due date may indicate negligence and constitute sufficient cause for denial of the extension." The Service argues that this statement in the regulation indicates that the mere fact of late-filing justifies a summary denial of Plaintiff's request here. The Court cannot agree. First, the regulation states that lateness "**may** . . . constitute sufficient cause for the denial of the extension." This statement indicates that the Service is still obligated to consider a tax-payers extension request, and the facts particular to the individual case. Second, in this instance, there is no record specifically indicating that Mr. Carney denied the request for simply being late—there is only the speculation of his supervisor. As the Court noted above, this is insufficient to prevent this Court from finding an abuse of discretion. See page 11, supra.

request are insufficient to prevent summary judgment. Sterling Nat'l Mortg. Co. v. Mortgage Corner, 97 F.3d 39, 45 (3d Cir. 1996).

### 2. Good and Sufficient Case for an Extension

Having determined that the Service abused its discretion in denying Plaintiff's extension request, the Court must next determine whether Plaintiff demonstrates "good and sufficient cause" to receive such an extension. See, e.g., Estate of Gardner v. Commissioner, T.C. Memo 1986-380, at *17 (T.C. 1986); Lemly v. Commissioner, T.C. Memo. 1973-147 (determining that an extension request which was filed after the expiration of the statutory period was filed within a reasonable period). As the regulation explains, "[t]o obtain such an extension, Form 4768 must be filed . . . and must contain a detailed explanation of why it is impossible or impractical to file a reasonably complete return by the due date." § 6081-1. The question that must be decided, then, is whether Plaintiff did in fact show that it was impractical to file for an extension prior to the expiration of the original due date under the regulation. See Estate of Cederloff v. United States, 2010 U.S. Dist. LEXIS 2553, at *5-6 (D. Md., January 13, 2010) (noting that "the court is required to conduct a de novo review" of the question of whether the taxpayer "establish[ed] reasonable cause for its failure to file the return in a timely manner.")

Plaintiff asserts that it was unable to complete IRS Form 4768, which is required for a party seeking an automatic 6-month extension under § 6081-1(a). Plaintiff argues that Form 4768 requires a party to certify as to particular facts (e.g., estimate of the estate taxes owed), and because Plaintiff did not have knowledge of the facts or documentation it was unable to properly complete the certification until after the initial time period for requesting an extension expired. Specifically, in explaining why it was unable to meet the original filing deadline, Plaintiff asserts that: (a) the

amount of estate taxes due could not be ascertained as a result of tensions among the daughter-beneficiaries delayed filing of the return; (b) the Estate's attorney was missing a document that was material to calculating the tax liability; (c) the Estate's assets were largely illiquid preventing Plaintiff from paying estimated taxes until after the expiration of the original filing period; (d) there were a number of communications between decedent's widow, Ms. Weller, and the Estate regarding her bequest that complicated calculating of the tax liability; and (e) the Estate was especially complex. Accordingly, Plaintiff asserts that it has demonstrated good cause for failing to file the form, and it was entitled to an extension under § 6081-1(c).

The United States responds that Plaintiff has not demonstrated good and sufficient cause, and that summary judgment must be denied. First, the Service asserts that there are material questions of fact as to the various circumstances that Plaintiff's contends justify its delay in filing the extension request. Second, Defendants contend that, in any case, Plaintiff's justifications are inadequate to demonstrate impracticability under § 6081-1(c); specifically, Plaintiff was obligated to file the form is "as complete as possible." Zeier v. United States Internal Revenue Service, 80 F.3d 1360, 1363 (9th Cir. 1996); St. Clair v. United States, 880 F.Supp. 669, 672 (D. Minn. 1993). Therefore, The United States argues, the fact that there was particular information that Plaintiff did not yet possess did not prevent it from complying with the extension request requirements (i.e., preparation of a Form 4768 ). The Court will consider each proffered justification for the Estate's late submission of the extension request.

> (a) *The amount of estate taxes due could not be ascertained as a result of tensions among the daughter-beneficiaries delayed filing of the return*

Plaintiff argues that the amount of taxes due could not be ascertained until after the original

filing date, as the Executrix and her sisters did not agree on which estate assets to include in the 10% calculation of the bequest to Weller.  See Doc. No. 19-1, at ¶ 21.  It was only after the issues among the sisters were resolved that the Estate Attorney contacted Weller with a proposal concerning the bequest amount.  Id. ¶¶ 22-24.

As noted above, neither party disputes that there was significant tension between the estate beneficiaries.  See Section II.B.2(ii).  In particular, there was "a very significant struggle among the [Decedent's daughters] about what should be included" in the 10% that should be transferred to [Weller]."  Doc. No. 19-1, at 18.  For example, "some of the sticking issues were the inclusion of the Douglas Road property . . . the inclusion of the Mass Mutual life insurance policies. . . . [a]nd the inclusion of some of the retirement accounts in the calculation of 10 percent."  Id.[8]  Therefore, filing of the extension request and associated documents could not take place in a timely fashion.

The Service responds that such difficulties are inapposite, because "a taxpayer [must] use the best information available to file a return by the due date prescribed by the statute."  Doc. No. 23, at 11.  It argues that Plaintiff was obligated to file the form "as complete as possible," and if Plaintiff was unable to calculate the value properly, "the estimated values for various categories of assets are to be used to calculate the tax."  See Zeier, 80 F.3d at 1363; St. Clair v. United States, 880 F.Supp. 669 at 672; Estate of Young v. Commissioner, T.C. Memo. 1983-686 (1983).  Accordingly, the Service asserts that the fact that a particular number was not ascertainable is irrelevant in determining whether "good and sufficient cause" existed.

The Court agrees with the Service that a taxpayer must file a tax return/extension request

---

[8] While there are material questions of fact in dispute as to the extent of Weller's role in causing any delay in the filing of the return, these facts are not necessary to this Court's finding. It is clear, however, that Weller made inquiries regarding her bequest.

using an estimate, if necessary, which is later subject to modification.  This general rule, however, is subject to two caveats that this Court finds to be significant.  First, although, as the United States emphasizes, a taxpayer is instructed to use a best estimate in submitting a Form 4768, the Form is an official form signed under penalty of perjury.  See Pl. Br. 17, at 13.  As Mr. Petrone testified, if an application for an extension of time was filed without sufficient knowledge of the truth of the information contained in the extension request, it could result in a prosecution for perjury.  See id.  Accordingly, a party has dual obligations:  an obligation to estimate its tax liability **and** an obligation to have a sufficient basis for the figures it includes in its form.  As such, simply because a taxpayer may use a best estimate in calculating its liability it does not follow that he or she will never require additional information prior to submitting Form 4768.

Second, the Court notes that an estimate in this case would have entailed a significant range, as the marital deduction for the Estate's tax return would have fallen any where between $175,000 and $663,000.  Id. at 4.  The estimate therefore would be totally unreliable.

With these considerations in mind, the Court finds that the Estate's difficulty in ascertaining the information necessary to filing a reasonably accurate return/extension request is significant in determining whether "good and sufficient cause" for an extension request existed.

> (b) *The Estate's attorney was missing a document that was material to calculating the tax liability.*

Plaintiff asserts that a certain critical document was missing, preventing it from timely filing the tax return.  That is, without such document Plaintiff could not properly and accurately file the return and/or extension request.

Plaintiff argues that the Estate Attorney and the Executrix did not yet have possession of a

Schedule A of the Prenuptial Agreement at the time the initial deadline expired. See Doc. No. 17-1, at 19. Plaintiff further asserts "that despite diligent inquiry [the document] could not be located in time to file Plaintiff s estate tax return before expiration of the original filing due date. Pl. Br. 26, at 14. The Prenuptial Agreement, without Schedule A, did not specify what kind of "estate" (taxable or probate) to use in calculation of the estate taxes. See Doc. No. 19-1, at ¶12. Accordingly, the Estate Attorney's calculation of the potential amount of the bequest to Ms. Weller was subject to an extremely wide range. Id. ¶16.

Defendant responds that Ms. Weller was in possession of Schedule A to the Prenuptial Agreement. See Doc. No. 19-1, at ¶16. Accordingly, the Service, argues that there was no missing documentation.

The Court need not resolve the parties' debate as to whether essential documentation (i.e., Schedule A) was "missing." The point worth noting is that the Estate did not have a copy of Schedule A, and the Estate's counsel was unaware that Ms. Weller had a copy of Schedule A. These two facts are not disputed by the Defendant. Without Schedule A, the bequest amount to Ms. Weller (and therefore the Estate's estimated tax payment) was impossible to calculate with accuracy.

Accordingly, the Court finds that the fact that the Estate and its attorney were not in possession of key documentation weighs in favor of finding good and sufficient cause for granting an extension request.

> (c) *The Estate's assets were largely illiquid preventing Plaintiff from paying estimated taxes until after the expiration of the original filing period.*

Next, Plaintiff argues that the estate illiquidity made payment of the necessary taxes difficult. The parties agree that the Estate was illiquid. See Doc. 17-4, ¶8; Doc. 23, ¶8. Sixty percent of the

liquid assets necessary to pay the estate tax were in the form of a life insurance policy with MassMutual Insurance.  See Doc. 17-4, ¶9; Doc. 23, ¶9.  The proceeds of the policy were not available until after the deadline for filing the return expired.  See Doc. 17-4, ¶11; Doc. 24, at 15.

Although inability to **pay** a tax assessment is distinct from inability to **file** a tax return, the Court finds that the liquidity of the Estate weighs (albeit minimally) in favor of granting Plaintiff's extension request.

> (d)  *Communications between decedent's widow (Ms. Weller) and the Estate with respect to her bequest complicated the calculation of the tax liability*

Plaintiff asserts that the dynamic between Mr. Proske's widow and the other Estate beneficiaries contributes to a finding of "good and sufficient cause" for delay in filing its extension request.

The parties disagree as to the significance of the interaction of Ms. Weller and the other beneficiaries: Plaintiff asserts that the relationship was adversarial, while the United States asserts that Ms. Weller was essentially passive in the process of calculating the Estate.  Compare Def. Br. 23, at 12 (asserting that Ms. Weller caused no difficulty to the calculation of the Estate's tax liability, "as the deposition testimony showed that the widow did not negotiate with the Estate and did not play any role in delaying the determination of her bequest amount."), with Pl. Br. 26, at 13 (asserting that the evidence shows that the relationship between Ms. Weller and the daughter-beneficiaries was "adversarial" in nature).  In any case, it is not disputed that Ms. Weller contacted her own attorney about her rights under the prenuptial agreement after the decedent's death, who in turn contacted the Estate's counsel.  Pl. Br. 26, at 13.  In so doing, Ms. Weller was unclear as to her entitlement to certain assets.  Id.  Regardless of how the relationship is characterized, the intersection of Ms.

Weller's interest and that of Mr. Proske's daughters was highly relevant to the calculation of the bequest and, therefore, the Estate's tax liability. One implication, for example, was that the Estate and its counsel had to arrange a number of alternative financial scenarios to discuss with Ms. Weller.[9]

This fact weighs in favor of finding good and sufficient cause for granting an extension request.

### (e)     *Complexity of the Estate*

Plaintiff urges the Court to consider that the Estate was particularly complex, and caused additional delay in preparing tax return documents, including the extension request. It argues that "the calculation of the amount due to the surviving spouse has been very difficult to determine accurately and has created significant delays in assessing the overall taxable estate." See Doc No. 17-4, ¶ 13. Although the United States makes no effort to contest this fact, it denies that this factor amounts to good and sufficient cause.

The Court finds that the circumstances surrounding the Estate's tax return were complex, and made preparation/filing of the necessary documents within the original time allocation difficult. This factor weighs in favor of finding good and sufficient cause for granting an extension.

\* \* \* \* \*

This Court finds that, considering the circumstances as a whole, there were a number of facts that made timely and accurate filing of the Estate's tax return impractical or at the very least difficult. While in isolation some of these factors would not constitute good and sufficient cause for a

---

[9] This complication was based in part on the fact that the Estate's attorney did not have Schedule A to the Prenuptial Agreement in its possession.

discretionary grant of an extension, taken as a whole the extension should have been granted. In so finding, the Court also notes that there is no indication of bad faith on the part of Plaintiff, and no suggestion that the United States would be prejudiced by having granted such an extension.

For the reasons stated, the Court finds that the Service abused its discretion in denying the extension request, and that the Estate's request should have been granted for good and sufficient cause shown. Accordingly, the Estate's tax return must be treated as timely filed, and the Estate's payment of penalties and interest totaling $305,000 should be refunded with interest.

### IV.  CONCLUSION

Plaintiff's motion for summary judgment as to the first Count of its Complaint is **granted**, and the Service's motion for summary judgment is accordingly **denied**.

 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:             May   25  , 2010
Original:      Clerk's Office
cc:                All Counsel of Record
                     The Honorable Mark Falk, U.S.M.J.
                     File